UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**DEIRDRE C.,**

**Plaintiff,**

      v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-00616-TPK

OPINION AND ORDER

## OPINION AND ORDER

      Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by an Administrative Law Judge on January 20, 2021 following a remand from this Court, denied Plaintiff's applications for disability insurance benefits and supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 10), and the Commissioner has filed a similar motion (Doc. 11).  For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I.  BACKGROUND

      Plaintiff filed her applications for benefits on October 30, 2014, alleging that she became disabled on that day.  After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on July 21, 2017.  The ALJ denied the claim, and, following the denial of review by the Appeals Council, the matter was appealed to this Court.  In a decision issued on September 3, 2019, the Court concluded that the ALJ did not have a sufficient evidentiary basis for determining that Plaintiff was able to do light work if she could change positions between sitting and standing every 25 minutes, and therefore remanded the case for further proceedings.  *See* Case No. 1:18-cv-00463 (September 3, 2019).  After the Appeals Council remanded the case, a hearing was held by a different ALJ on December 22, 2020.  Both Plaintiff and a vocational expert, Michelle Bishop, testified at the hearing.

      The Administrative Law Judge issued an unfavorable decision on January 20, 2021.  The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017 and that she had not engaged in substantial gainful activity since her alleged onset date.  Next, he concluded that Plaintiff suffered from severe impairments including obesity, bilateral knee osteoarthritis and degenerative joint disease, asthma, carpal tunnel syndrome in both wrists, COPD, and right shoulder degenerative joint disease.  However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria

for disability under the Listing of Impairments.

Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform a limited range of light work. She could frequently operate hand controls and reach, push, pull, and feel with both upper extremities. He further found that she could occasionally operate foot controls or push or pull with her lower extremities, kneel, crouch, stoop, balance, crawl, and climb stairs and ramps (but not ladders, ropes, or scaffolds). She also could not be exposed to unprotected heights and moving mechanical parts, needed to use a cane to ambulate, could tolerate occasional exposure to dust, mists, gases, noxious odors, fumes, pulmonary irritants, vibration, and poor ventilation, and could understand, remember, and carry out simple instructions and make simple work decisions. After making this determination, the ALJ concluded that Plaintiff could not perform her past relevant work as a nurse assistant. However, she could work as either an usher or a tanning salon attendant, and the ALJ determined that those jobs existed in substantial numbers in the national economy. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act through August 18, 2017. Plaintiff had filed subsequent applications for benefits which were granted beginning on August 19, 2017, so that the ALJ's unfavorable decision is limited to the time period between October 30, 2014 and August 18, 2017.

Plaintiff, in her motion for judgment on the pleadings, raises two issues, arguing that: (1) the ALJ did not properly evaluate the treating source opinions; (2) the ALJ did not fully evaluate her need to use a cane. *See* Plaintiff's Memorandum, Doc. 10-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff's testimony at the first administrative hearing is briefly summarized in the Court's prior opinion. The relevant portion of that testimony related to her knee pain arising from bilateral osteoarthritis. *See* Tr. 1062. At the second hearing, Plaintiff, who, by then, was 57 years old, testified that she lived alone but that her children helped her with chores. She reaffirmed that her knee problems kept her from working and that she used a cane for walking. She also developed carpal tunnel syndrome in 2014 which caused numbness and loss of grip strength, but most of those symptoms were alleviated by surgery, although she still could not use a keyboard for very long. Plaintiff had both knees replaced in 2017 but was still experiencing pain in her right knee. Between 2014 and 2017, she had days when she had to use a walker, and her knee pain limited her lifting ability. She was able to stand for only ten minutes at a time and always had pain while walking. Lastly, Plaintiff testified that she suffered from anxiety and depression and had days where she did not want to get out of bed.

The vocational expert, Ms. Bishop, first testified that Plaintiff's past work as a nurse's aide was a semi-skilled job ordinarily performed at the medium exertional level but that Plaintiff performed it at the heavy exertional level. Next, she was asked questions about a hypothetical person with Plaintiff's vocational background who was restricted to light work with a number of

restrictions on the use of her arms and legs, various postural restrictions, a limitation in exposure to various environmental conditions, and who could do only simple work activities.  She said that such a person could not do Plaintiff's past work , but he or she could be employed as an usher, a children's attendant, or a tanning salon attendant.  She also gave numbers for those jobs as they existed in the national economy.  If the person also needed to use a cane to walk, the position of children's attendant would be eliminated, but not the other two jobs.  Finally, if the person were limited to sedentary work and needed to be off task for 20% of the time, no jobs would be available.  Answering additional questions from Plaintiff's counsel, Ms. Bishop testified that there was very little lifting involved in those jobs and that the tanning salon attendant had a sit-stand option; she also said that at that time, given the COVID restrictions which were in place, there were only a few tanning salon positions open, and no usher jobs available, but there were such jobs during the period in question (from 2014 to 2017).

### B.  Treatment Records

The medical records which were admitted as part of the first round of administrative proceedings are also summarized in the Court's prior opinion, as follows:

> During a consultative examination in March 2015, Plaintiff reported to Honbiao Liu, M.D. ("Dr. Liu") that she suffered from arthritis in her knees with 7 out of 10 pain, requiring her to change positions every five minutes while sitting or standing. Tr. 669. Dr. Liu noted Plaintiff's knees had full range of motion with no swelling or effusion of the joints but observed that she had difficulty rising from a chair. Tr. 669-70. Dr. Liu ultimately opined that Plaintiff had moderate limitations with prolonged walking, bending, and kneeling; mild to moderate limitation for lifting, carrying, and fine manipulations with bilateral hands to zip, button, and tie; and should avoid dust and other irritating factors to limit asthma attacks. Tr. 671. The ALJ accorded the opinion "some weight," noting that Dr. Liu's suggested limitations were consistent with the plaintiff's arthritis in her knees but also found that the opinion "does not point to limitations so severe as to preclude employment within the light residual functional capacity" where "musculoskeletal findings ... were stable, except for limping gait." Tr. 25. Dr. Liu did not address the plaintiff's capacity for sitting and/or standing during the course of a standard eight-hour workday within a five-day workweek.
>
> In February 2016, the plaintiff was examined again by Dr. Dao for bilateral knee pain from arthritis and was prescribed Ibuprofen and Tylenol. Tr. 703. In January 2017, Dr. Dao authored a medical source statement identifying the plaintiff's treatment for chronic bilateral knee pain and stating that the plaintiff was able to work full-time, "according to her skill," with a reference to a prior referral letter that he prepared in 2015 for the plaintiff to obtain a functional capacity evaluation from a consultative examiner. Tr. 715. The ALJ accorded the opinion "great weight" reasoning that Dr. Dao's statement was supported by unremarkable physical findings during the plaintiff's follow-up visits in 2016. Tr. 26.

Cunningham v. Berryhill, 2019 WL 4154483, at *4–5 (W.D.N.Y. Sept. 3, 2019).

Plaintiff has summarized additional medical records in her memorandum, including treatment records concerning her carpal tunnel syndrome and surgery, which occurred in February, 2015. The surgeon, Dr. Brown, limited her to occasional gross and fine manipulation with her right hand. She also notes that at an office visit with a physician's assistant in 2017, she received cortisone injections in both knees, and that she later reported to Dr. Lapoint that her knees would stiffen if she sat for a prolonged period of time and that she could not walk for any length of time. Dr. Lapoint stated that Plaintiff was temporarily totally disabled as she recovered from her impairments. Plaintiff also points out that Dr. Dao, in certifying her for a handicapped parking sticker, said that she was severely limited in her ability to walk due to severe osteoarthritis in her knees, and that in 2017 she was diagnosed with major depressive disorder.

### C. Opinion Evidence

Dr. Liu's opinions are set out above. Plaintiff was also seen on a consultative basis by a psychologist, Dr. Fabiano, who thought that she had mild to moderate limitations in her ability to relate to others and to deal with work stress. A state agency reviewer also commented on Plaintiff's mental functional capacity, concluding that she did not have a severe mental impairment.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted);

*see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

### A. Evaluation of Dr. Dao's Opinion

In her first claim of error, Plaintiff argues that the ALJ failed to give good reasons for rejecting Dr. Dao's opinion.  She notes that the prior version of the "treating physician" rule applies in this case but that the ALJ did not expressly discuss the relevant factors when discounting Dr. Dao's opinion and incorrectly stated that there was no evidence in the record to support it.  She also criticizes his reasoning process as too conclusory and asserts that he not only failed to follow the applicable regulation but did not comply with this Court's order of remand.  The Commissioner responds that the ALJ acted appropriately in considering Dr. Dao's opinion to be undefined and unsupported by the evidence.

The ALJ provided this rationale for discounting Dr. Dao's opinion:

> The undersigned considered the treating source statements of providers including Robert K. Brown, M.D., and Tinh T. Dao, M.D., as well as temporary disability ratings noted in the record, subject in part to the remand order of the Western District of New York (*See* 7A; 8A; 10F; 12; 14F; 15F-5). The undersigned has found these to be of limited weight and inconsistent with the medical evidence in this case. These opinions provided generally that the claimant had temporary disability ratings, or denote the claimant's ability to perform certain actions. The opinions consist of circled responses with undefined values, and no evidence is provided in support of those responses. Furthermore, as described, these disability and impairment ratings are temporary in nature, and do not encompass the full period relevant to this determination. Finally, there is insufficient evidence provided to support such ratings, which are already standalone in nature.

(Tr. 986).

Under the version of 20 C.F.R. §404.1527 in effect at the time of Plaintiff's application,

> "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " [*Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008)] at 128 (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an

> ALJ not to give controlling weight to a treating physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (holding that "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. See 20 C.F.R. § 404.1527(c)(2)(I), (2)(ii), (3)–(6). "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Burgess*, 537 F.3d at 129 (alteration in original) (quoting *Halloran*, 362 F.3d at 33). The failure to provide " 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30 [citation omitted]. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131.

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

It appears that the primary reason given by the ALJ for giving little weight to Dr. Dao's opinion - which consists of his having checked a box on a Department of Motor Vehicles form - was that the functional limitation he indicated ("Severely limited in ability to walk due to an arthritic, neurological or orthopedic condition") is not defined. The ALJ also observed that the was no evidence cited on the form in support of the opinion, which is a true statement, but not one which takes into account any other evidence in the record apart from the form itself, which did not ask for supporting evidence. He also reasoned that the disability indicated by these two treating sources was temporary in nature, but that reason does not appear to apply to Dr. Dao's opinion but only Dr. Brown's. Finally, the ALJ said, without any specificity, that the evidence of record was "insufficient" to support either opinion. He did not, in that context, discuss how the evidence from the numerous treatment notes showing that Plaintiff consistently experienced bilateral knee pain and received treatment for that condition failed to support the conclusion that she would have enough difficulty walking to qualify for a handicapped placard.

This case calls for a fairly straightforward application of the legal principles applicable to

an ALJ's decision to afford little to no weight to a treating source opinion. Nothing in the ALJ's decision indicates that he followed the required regulatory framework, nor did articulate his reasoning with sufficient specificity to satisfy the "good reasons" requirement in effect at the time Plaintiff filed her application for benefits. It bears noting that the ALJ's comment that the limitation expressed on the form in question was "undefined" is questionable; medical records often speak of severe limitations to physical abilities. Nevertheless, if he believed the phrasing was ambiguous, he could have asked for clarification, something especially relevant in a case where the question is whether the claimant could perform the standing and walking requirements of light work activity. Consequently, the case will be remanded for further consideration of this issue.

### B. Use of a Cane

Plaintiff also contends that the ALJ did not properly evaluate the effect of her need to use a cane on the jobs identified by the vocational expert. She argues that any residual functional capacity finding must incorporate specific limitations such as use of the dominant hand for lifting and carrying that arise from use of the cane while walking, and that the ALJ's finding in this case did not meet this standard. *See* Plaintiff's memorandum, Doc. 10-1, at 27, *citing Sean W. v. Comm'r of Soc. Sec.*, 2022 WL 472570 (W.D.N.Y. Feb. 16, 2022). The Commissioner asserts that many light jobs do not require any substantial amount of walking, so that limitations which may have existed while Plaintiff was walking do not necessarily apply to the jobs identified by the vocational expert, particularly the tanning salon attendant job, which, according to the vocational expert, permitted a sit/stand option.

In light of the fact that the case is being remanded based on Plaintiff's first claim of error, the Court need not reach the merits of this issue. However, it would be helpful if the ALJ, on remand, would follow the reasoning process set out by this Court in *Sean W.* and clarify the extent to which Plaintiff's use of a cane affected her ability to satisfy the physical demands of any job which the ALJ believes Plaintiff to be capable of performing.

### V. CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 10), **DENIES** the Commissioner's motion (Doc. 11), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

/s/ Terence P. Kemp
**United States Magistrate Judge**